UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LINDA D. FORD,

    Plaintiff,

vs.                                                                               CASE NO. 3:07-cv-835-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), which seeks review of the final decision of the Commissioner of the Social Security (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #16, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #17, D's Brief). The Commissioner has filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Both parties consented to the exercise of jurisdiction by a magistrate judge and the case has been referred to the undersigned by the Order of Reference dated May 8, 2008 (Doc. #15).

The Court has reviewed the record and has given it due consideration in its entirety, including arguments presented by the parties in their briefs and materials provided in the transcript of the underlying proceedings. As Plaintiff is proceeding before this Court on a *pro se* basis, the Court has reviewed and considered the complaint and Plaintiff's brief with the liberal construction to which *pro se* pleadings are entitled. *Estelle v. Gamble*, 429 U.S.

97 (1976); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Holsomback v. White*, 133 F.3d 1382, 1386 (11th Cir. 1998); *Moore v. Schlesinger*, 150 F. Supp.2d 1308, 1311 (M.D. Fla. 2001).

Upon review of the record, the Court found the issues raised by Plaintiff were adequately briefed and determined oral argument would not benefit the Court in making its determinations. Accordingly, the Court has decided the matter on the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff Linda D. Ford filed an application for DIB on April 17, 2001, alleging disability beginning March 7, 2000 (Tr. 62). The record reflects Plaintiff was insured for DIB through December 31, 2005 (Tr. 14, 23). Plaintiff's application was denied initially and upon reconsideration (Tr. 47-49, 51-53). Thereafter, Plaintiff requested a hearing, which was held on September 26, 2003, before Administrative Law Judge (ALJ) Gerald Murray (Tr. 337-360). Plaintiff appeared and testified at the hearing.[1] Plaintiff was represented by attorney Ruth Gorme during this first hearing (*see* Tr. 337). ALJ Murray denied Plaintiff's application for DIB in a decision dated December 1, 2003 (Tr. 209-218). Plaintiff requested review of the hearing decision by the Appeals Council (AC), which was granted. On August 28, 2005, the AC vacated this hearing decision and remanded the case for the ALJ to obtain evidence from a vocational expert (VE) and to determine whether Plaintiff could perform her past relevant work as it is usually performed in the national economy (Tr. 256-

---

[1]Plaintiff was represented by the Law Offices of Sims, Amat, Stakenborg & Henry, P.A. throughout the administrative proceedings (Tr. 64-58, 219-222, 265-68). Ms. Dorothy Clay Sims, Esq. was the lead attorney of record (Tr. 219, 268). During the administrative hearings, Plaintiff was personally represented by attorneys from Ms. Sims' law firm, as noted in the text of this Order and Opinion.

67). As required by the AC remand, ALJ Murray held a subsequent hearing on February 14, 2006, at which vocational expert Melissa Howell appeared and testified (Tr. 361-380). Plaintiff appeared at the hearing and was represented by attorney Danialle Riggins.[2] In a decision dated April 25, 2006, the ALJ determined Plaintiff could not perform her past relevant work as it is usually performed in the national economy but could perform other work, and again denied Plaintiff's application for disability insurance benefits (Tr. 10-22). Plaintiff again requested review of the hearing decision by the AC; however, the AC denied this request (Tr. 3-5). Thus, the April 25, 2006 decision of ALJ Murray became the final decision of the Commissioner.

Plaintiff, acting on her own behalf as a *pro se* litigant, filed the instant action in federal court on August 31, 2007 (Doc. #1).

## STANDARD OF REVIEW

A plaintiff is entitled to disability insurance benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505.[3] The Commissioner has established a five-step sequential evaluation process

---

[2]The Court notes hearing transcript indicates Ms. Dorothy Clay Sims, Esq. appeared on behalf of Plaintiff (Tr. 361). However, Plaintiff herself states she was personally represented by attorney Danialle Riggins during this remand hearing (*see* P's Brief at 1), and the transcript of the dialog between the attorney and ALJ Murray at the end of the hearing reveals Ms. Sims was not present (*see* Tr. 379-380). Review of the record further reveals Ms. Riggins pursued Plaintiff's request for AC review of the April 25, 2006 decision on Plaintiff's behalf (Tr. 8).

[3]Unless otherwise noted, references to 20 C.F.R. will be to the 2008 edition.

for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4); *Crayton v. Callahan*, 120 F. 3d 1217, 1219 (11th Cir. 1997). A plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health &*

Human Serv's., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) (no person shall be considered to be under a disability unless he or she furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## ANALYSIS

Plaintiff Linda D. Ford, who was born on October 11, 1959, is now a forty-nine year old female (Tr. 71). Plaintiff has past relevant work experience in the retail industry as a clerk, cashier and store manager (Tr. 103, 341-43). In her Disability Report-Adult dated April 20, 2001, Plaintiff alleged she was unable to work due to lower back pain (Tr. 90).

Plaintiff raises three primary issues on appeal. First, Plaintiff appears to raise a due process argument, claiming the ALJ erred by: (a) improperly limiting the scope of the February 14, 2006 hearing to the vocational testimony; and, (b) failing to allow Plaintiff "her

5

right to correct any inaudible or incorrect statements of previous hearing of September 26, 2003" (P's Brief at 1).  Second, Plaintiff challenges the VE testimony from the February 14, 2006 hearing.  In this regard, Plaintiff asserts the vocational expert found there was not a job Plaintiff could perform given her sit, stand, lie down "requirements" (P's Brief at 2; Doc. #1 at 2).  Third, Plaintiff takes issue with the weight the ALJ afforded the opinion of Dr. James Janousek, one of Plaintiff's treating physicians (Doc. #1 at 2).

**I. Plaintiff's Due Process Rights**

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (U.S. 1976).  An administrative hearing must be *fair* to comply with due process requirements. *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (emphasis added).  Due process imposes constraints on decisions that deprive a plaintiff of a "liberty" or "property" interest within the meaning of the Due Process Clause of U.S. Const. amends. V and XIV. *Mathews v. Eldridge*, 419 U.S. at 332.  In the context of a Social Security hearing, a plaintiff's potential property interest is at issue.  *Id.*

There must be a showing of clear prejudice before it will be found a claimant's right to due process has been violated to such a degree that remand of the case for further development is warranted.  *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997) (internal citation omitted).  In determining whether such prejudice existed, the court should be guided by whether the record reveals evidentiary gaps which result in unfairness.  *Id.*

Plaintiff argues she has been denied her the right to "re-do" the earlier hearing and the ALJ erred by improperly limiting the scope of the February 14, 2006 hearing to the vocational expert's testimony (P's Brief at 1-2).  However, it appears Plaintiff has

misinterpreted the remand order of the Appeals Council, which was, in fact, specific and limited in scope (*see* Tr. 255-57).

The AC remanded the case with directions for the ALJ to obtain evidence from a vocational expert and to determine whether Plaintiff could perform her past relevant work as it is usually performed in the national economy (Tr. 255-257). Specifically, the Appeals Council instructed the ALJ Murray to:

> Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 C.F.R. 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 256-257). In addition, the AC instructed the ALJ to "offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, and take any further action needed to complete the administrative record and issue a new decision" (Tr. 257).

In compliance with the AC's instructions on remand, ALJ Murray held the remand hearing at which Plaintiff and her attorney appeared, and VE Melissa Howell appeared and testified (Tr. 364-76). At the outset of the hearing, the ALJ read the notice of remand, noting that it was "extremely narrow" (Tr. 363). In this instance, Plaintiff's attorney was given wide latitude and conducted the majority of the hypothetical questioning of the vocational expert (*see* Tr. 371-76). The VE testified she was familiar with Plaintiff's past work history (Tr. 365) and that Plaintiff could not perform her past work of store manager

7

because the position as generally performed in the actual economy more closely resembled that of a stock clerk which is classified as a heavy exertional position, whereas the Dictionary of Occupational Titles (DOT)[4] classified a retail store manager as a light exertional position (Tr. 365-66). The VE also testified Plaintiff could not perform her past work as "cashier-checker" because as generally performed it does not provide for the sit/stand option included in Plaintiff's residual functional capacity (Tr. 368-369). However, the VE enumerated several jobs a person with Plaintiff's vocational characteristics could perform. VE Howell testified the jobs of food and beverage order clerk and telephone quotation clerk would be among those positions in the national economy that such a person could perform (Tr. 370).

Plaintiff's attorney questioned the VE for five pages, posing a number of hypothetical questions and discussing the additional medical records that were submitted subsequent to the AC remand (Tr. 370-378). The ALJ then concluded the hearing by asking Plaintiff's attorney if there was "anything else that you see as necessary here that you would like to do? I'm always happy to give you every opportunity." (Tr. 379.)

Based on the language of the AC decision, the ALJ correctly limited the scope of the February 14, 2006 hearing to obtain evidence from the VE. Furthermore, at the conclusion of the remand hearing, the ALJ accepted additional evidence from Plaintiff's counsel into the record (Tr. 376-79). which the ALJ considered and discussed in the decision (Tr. 17).

---

[4]The references to "DOT" are short form citations to the United States Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991). The Commissioner has taken administrative notice of the reliability of job information provided in the DOT. *See* 20 C.F.R. §§ 404.1566(d), 416.966(d).

Plaintiff claims her attorney sought to "re-do the previous hearing of September 26, 2003" and that the ALJ said "we're not going to do that;" however, there is no evidence in the record to support Plaintiff's assertion (P's Brief at 1; Tr. 361-380). Matters not in the certified record of the underlying proceeding are outside the scope of this Court's review. A fair reading of the remand order reveals the purpose of the AC decision was not to "re-do" the previous hearing as Plaintiff claims, but to obtain evidence from a vocational expert and to resolve any conflicts between the evidence provided by the VE and the information in the DOT (Tr. 256). Moreover, at the end of the hearing the ALJ specifically asked the Plaintiff and her counsel if they would like to discuss anything further, and neither Plaintiff nor her attorney sought to raise any additional issues at that time (Tr. 379). It is clear from the hearing transcript that the ALJ complied with the parameters of the AC's decision.

Plaintiff also claims the ALJ erred by failing to allow Plaintiff "her right to correct any inaudible or incorrect statements of previous hearing of September 26, 2003" (P's Brief at 1). The Court has considered this argument in the context of possible evidentiary gaps that would demonstrate prejudice. *See Graham v. Apfel*, 129 F.3d at 1423.

In her brief, Plaintiff makes the broad assertion that the hearing transcript contained incorrect statements; however, Plaintiff fails to accurately identify any specific examples of "incorrect statements" in her brief or the complaint. Although Plaintiff asserts in the complaint that there is an inaccurate statement in the record of her testimony that she hurt her back "while driving a Coca-Cola truck" (Doc. #1 at 1), review of the hearing transcript finds the accurate statement that Plaintiff "re-injured" her back in September 1999 while "moving the Coca Cola rack" (Tr. 341). Plaintiff complains there were "lots of inaudibles," but in review of the September 26, 2003 hearing transcript, the Court found only eight

9

"inaudible" notations within Plaintiff's testimony (Tr. 342, 343, 344, 345, 346, 356, 357, 358). In each of these instances, it is clear only a word or two is missing from the content.[5] It is also clear both the ALJ and Plaintiff's attorney had to request Plaintiff speak louder for the recording equipment (Tr. 339, 340, 342).

Upon careful consideration, Court finds the limited inaudible segments of the transcript do not prevent an understanding of Plaintiff's testimony or prejudice Plaintiff in any way. See *Webster v. Astrue*, 580 F. Supp. 2d 785, 795 (W.D. Wis. 2008) (a plaintiff who claims his or her due process rights were violated due to an inaccurate or incomplete transcript must show a complete and accurate transcript was material and would have changed the outcome of the case). The inaudible sections do not present such evidentiary gaps as would possibly change the outcome of this case. Moreover, Plaintiff was represented by counsel at both hearings, and had the opportunity to raise this issue at the second hearing, but chose not to do so. Plaintiff has not demonstrated a showing of prejudice that would indicate Plaintiff's right to due process has been violated. *See Graham v. Apfel*, 129 F.3d at 1422-23; *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).

**II. Treating Physician's Opinion Evidence**

As Plaintiff raised this issue in the body of the filed complaint (*see* Doc. #1 at 2), and resolution of whether the proper weight was given to the opinion evidence of Dr. Janousek is tied to resolution of whether the ALJ properly incorporated all of Plaintiff's limitations in

---

[5]The Court notes the September 26, 2003 transcript contains two additional "inaudible" notations that exist within the questions asked by Plaintiff's counsel (Tr. 345, 351). Here again, it appears only a word or two comprises the inaudible portion of the dialog.

the hypothetical question posited to the vocational expert, the Court will address this matter before discussing the vocational expert testimony.

In this case, the ALJ recognized the opinion of Dr. James Janousek, M.D., a treating physician, but did not afford the opinion significant weight (Tr. 17, 18). The governing rule is that substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician *unless there is good cause to do otherwise*. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (emphasis added); *Edwards*, 937 F.2d at 583; 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583.

The ALJ may appropriately find good cause to reject a treating physician opinion where the opinion is not bolstered by the evidence, where the evidence supports a contrary finding, or where the opinion is conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the opinion based on the factors listed in the regulations. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ discounted Dr. Janousek's opinion regarding Plaintiff's functional limitations as not supported by his own treatment records and as based on Plaintiff's subjective complaints (Tr. 18). At the request of Plaintiff's counsel, Dr. Janousek completed a Treating Physician's Medical Assessment of Ability to Do Work-Related Activities (Physical) Form on March 3, 2004 (Tr. 275-79). Among the more restricting limitations, Dr. Janousek marked that Plaintiff could lift less than five pounds, stand or walk two to three hours in an eight-hour day and continuously for thirty minutes to one hour, and sit two to three hours in an eight-hour day when in pain and continuously for thirty minutes to one hour (Tr. 275-76). Dr. Janousek also marked "yes" in response to the question, "Are the claimant's complaints that she/he must lay down up to 1 to 2 (combined) hours out of an 8 hour day reasonable and necessary to alleviate pain and fatigue?" (Tr. 279.)

Review of the record reveals Dr. Janousek treated Plaintiff for routine ailments and regular complaints of lower back and leg pain from March 1996 to May 2003 (Tr. 140-52, 192-97).[6] Plaintiff's pain treatment consisted of an occasional Decadron shot (Tr. 149, 150, 192) and prescription medications (Tr. 143-45, 148-50, 192-93, 195-96). In this case, the ALJ correctly noted that the only basis for Dr. Janousek's opinion of such extreme limitations was Plaintiff's subjective complaint of increased pain (Tr. 275-79). However, an opinion based on a claimant's unsubstantiated complaints is not a medical opinion that

---

[6]The Court notes that the transcript List of Exhibits denotes Exhibit 20F to contain medical records from Dr. Janousek for the period April 9, 2004 to February 8, 2006. While it is indeed plausible the records were obtained from Dr. Janousek's office (see Tr. 301, letter from Plaintiff's counsel indicating same), the records themselves are of Plaintiff's visits to Hands Hospital Emergency Room. Unfortunately, Defendant's counsel erroneously referred to these documents as records of Plaintiff's treatment by Dr. Janousek (*see* D's Brief at 10-11). However, such error is immaterial to the Court's independent review of the record and is thus harmless to the Court's determination.

entitled to any deference. *See Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (finding the ALJ properly rejected the opinion of a treating physician "based primarily on Crawford's subjective complaints of pain").

The Court's review of the record finds the ALJ had good cause to discount the weight given to Dr. Janousek's opinion on Plaintiff's ability to work. Dr. Janousek's limitations are not supported by his own treatment notes by the other medical evidence of record.

## III. Vocational Expert Testimony and Plaintiff's Impairments

Here, Plaintiff seems to argue the ALJ erred by ignoring the vocational testimony that indicated Plaintiff could not perform any work due to her impairments (P's Brief at 2; Doc. #1 at 2). Plaintiff implies the ALJ erred in failing to consider all of Plaintiff's severe impairments and limitations and in failing to fully credit Plaintiff's testimony (P's Brief at 2).

### *Plaintiff's Credibility*

Plaintiff is correct that the ALJ did not find her testimony as to the disabling nature of her pain to be fully credible. ALJ Murray stated he had considered Plaintiff's allegation that she was incapable of any work due to her impairments and found it unpersuasive (Tr. 18). More specifically, the ALJ found, "The extent of pain and limitation alleged by the claimant is simply not supported by the weight of the objective medical evidence." (Tr. 18.)

While an ALJ must consider a plaintiff's subjective testimony of what restricts his/her ability to work, the ALJ may reject the testimony as not credible and such a determination will be reviewed under the substantial evidence standard. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at

13

1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any fact are conclusive if supported by substantial evidence).

Here, a careful reading of the ALJ's decision reveals the ALJ considered all the record evidence and substantial evidence supports the ALJ's determination that Plaintiff's testimony was not entirely credible. In the instant case, the ALJ discussed the medical evidence of record, Plaintiff's subjective testimony, the vocational expert's testimony, and the medical source opinions of treating and non-treating sources (Tr. 14-20). The ALJ did not reject Plaintiff's testimony outright, but rather found that Plaintiff's allegation that she could not perform any work was "unpersuasive" in light of the objective medical evidence (Tr. 18).

In making this determination, the ALJ did not simply make a conclusory statement and leave it at that. Throughout the decision, the ALJ points to specific evidence that does not support Plaintiff's claims of disabling pain (Tr. 14-20). For example, Plaintiff's treatment for her pain by Drs. Jacobus and Janousek was notably conservative in nature (Tr. 140-52, 177-79, 192). Dr. William Guy, M.D., examined Plaintiff on June 28, 2001 and found a normal and full range of motion of all joints and extremities, while also noting her gait to be somewhat slow antalgic (Tr. 155). Dr. Robert Greenburg, M.D., examined Plaintiff on January 2, 2002 and reported Plaintiff demonstrated some lumbar pain climbing off and on the examining table, but there was no lumbosacral spasm present and Plaintiff's range of motion was full on all joints, but decreased on the lumbar spine (Tr. 165-66). Dr. Greenburg further noted Plaintiff's gait was normal and offered his opinion that she would be unable to perform work related activities that required <u>heavy</u> lifting or bending (Tr. 165-66) (emphasis added).

The ALJ must consider the medical evidence of record when assessing Plaintiff's testimony as to the severity of her alleged pain and the limitations resulting from that pain 20 C.F.R. § 404.1529(c). Here, the ALJ properly contrasted Plaintiff's medical record with the severity of her alleged limitations. The ALJ considered Plaintiff's activities of daily living, to which she attested, and which were reported at various places in the record. The ALJ, as fact-finder, when questioning Plaintiff face-to-face, found she was not fully credible. Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ recognized that he had to articulate a reasonable basis for the determination and did so. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989). The ALJ's finding that Plaintiff's testimony and subjective statements were not fully credible, is supported by substantial evidence.

*Consideration of Plaintiff's Impairments*

Plaintiff's argument on this issue is that the vocational expert stated there was not an eight hour a day job that Plaintiff could perform under her sit, stand and lie down requirements (P's Brief at 2; Doc. #1 at 2). Plaintiff has misinterpreted the VE's testimony from the remand hearing.

It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). As discussed above, the Court has found the ALJ properly evaluated the medical evidence and Plaintiff's testimony and accorded proper weight to the objective and subjective evidence of record. The ALJ's RFC assessment is based on substantial evidence. Thus, the only question is whether the ALJ failed to include any

limitations resulting from Plaintiff's severe impairments in the hypothetical question he posed to the vocational expert, and if so, whether such failure constitutes grounds for reversal.

In this case, the ALJ asked the vocational expert to testify as to whether a person with Plaintiff's current physical limitations could perform Plaintiff's past relevant work (Tr. 363-69). After resolving the discrepancies between Plaintiff's prior work as it is actually performed in the economy and as it is classified in the DOT, the ALJ then asked the VE if she could identify any other jobs in the economy that a person with Plaintiff's vocational characteristics could perform (Tr. 369-71). The expert then identified several positions such a person could perform (*see* Tr. 370). The ALJ limited the hypothetical situations to a person capable of light or sedentary work with a required option to sit and stand at will (Tr. 363-71). Thus, Plaintiff's impairments are accounted for in the ALJ's hypothetical questions and the residual functional capacity assessment.

Plaintiff's counsel asked the vocational expert a number of hypothetical questions, many of which incorporated restrictions on Plaintiff's ability to work that were more extreme than those actually set forth in the ALJ's assessment of Plaintiff's residual functional capacity (*see* Tr. 371-75). For example, when Plaintiff's counsel posed a question wherein the number of hours a person could stand or walk was limited to two to three hours, and the number of hours a person could sit was limited to two to three hours, the vocational expert correctly replied that as the total number of work hours added up to less than eight hours per day that person would not complete a full work day, which would eliminate all jobs (Tr. 372).

The ALJ found Plaintiff retained the capacity to perform a range of sedentary and light work activity in which she must have the option to alternate between sitting and standing at will (Tr. 18). The ALJ did not find Plaintiff incapable of working an average of eight hours per day, but rather incorporated the sitting and standing at will option into Plaintiff's RFC to account for her severe impairments. The ALJ was not required to include any limitations offered by Plaintiff's counsel or Plaintiff's medical sources that were not supported by substantial evidence and/or were properly discounted. *See McSwain v. Bowen*, 814 F.2d 617 (11th Cir. 1987). The ALJ correctly relied on the vocational testimony to determine there were other jobs that Plaintiff could perform.

## CONCLUSION

Review of the record as a whole reveals substantial evidence supports the ALJ's finding of non-disability. Accordingly, for the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 23rd day of March, 2009.

Copies to:
Counsel of Record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge